## No. 65.

### SUCCESSION OF JAMES HOSS.

In this case, the administrator of the succession of the deceased partner of a commercial firm is sued for maladministration by the surviving partner. Under the facts of the case, that the surviving partner himself partly took charge of the recovery of the assets of the late firm, and partly acted conjointly with the administrator, it is held by the Court that, whatever liability both the administrator and surviving partner incurred towards the creditors of the firm, the action of said surviving partner in the premises, has debarred him from any claim against the administrator.

APPEAL from the First Judicial District Court, parish of Caddo. *Alexander*, Judge *ad hoc*.

*Looney & Elstner* for the Opponent and Appellant.

*Wise & Herndon* for the Administrator and Appellee.

The opinion of the Court was delivered by

TODD, J.    James Hoss died in September, 1873, in the city of Shreveport. At the time of his death he was a member of the commercial partnership of Hoss & Noel, doing a mercantile business in said city.

Soon after Hoss' death, the surviving partner, Taylor Noel, applied for the appointment of liquidator of the partnership, but never thereafter qualified as such. He, however, by the consent of the administrator of Hoss' (his deceased partner's) succession, retained in his possession and under his control the effects of the partnership. These effects consisted of the stock of goods, notes, accounts, rights and credits belonging to the firm, and appraised at $43,309 35. Noel sold the stock of goods, and gave his attention to the collection of the debts due the firm, and to the payment of its liabilities, till the 5th of January, 1875, when the books, notes, accounts, etc., were turned over by him to Messrs. Egan & Wise, the attorneys of the administrator of James Hoss' succession.

Jacob Hoss, the administrator of this succession, was appointed in December, 1873, and in the petition for his appointment he stated that it was the wish of Taylor Noel, surviving partner, and of the creditors of the firm, that he should take charge of and administer the effects of

the partnership. These effects were included in the inventory of the succession, to the extent of the deceased's interest therein, which was two-thirds; Noel's interest embracing the other third.

Notwithstanding his appointment, and that his application included an administration of the partnership effects, Hoss still permitted Noel to remain the actual administrator of the partnership, as stated, down to the 5th of January, 1875.

On the 17th February, 1877, Hoss filed his first account of administration, which was homologated on the 26th May, 1877, not having been opposed.

On the 14th of June, 1878, the administrator filed his second account. This account was opposed by the largest creditors of the firm, and by Noel, the surviving partner. The former, however, subsequently withdrew their opposition, and the opposition of Noel alone remained. It was tried in the District Court, before a judge *ad hoc*, and dismissed, and the account homologated; and from this judgment he, Noel, has appealed.

The opposition alleges neglect and laches on the part of the administrator, through which, it is charged, that the larger part of the notes and accounts and other assets of the firm were lost. The administrator's accounts show only a small part of the debts due the firm, according to the inventory, to have been collected; and the sole question presented, is, whether the administrator is liable to the surviving partner of the firm for the amounts uncollected or any part thereof. It is mainly a question of fact. The counsel for the opponent have correctly laid down the abstract legal principles governing the duties and obligations of administrators and measuring their liability, and supported them by numerous and apposite authorities. They would prove conclusive in this case touching the liability of this administrator did the facts of the case justify their application.

What are the facts?'

As previously stated, the entire assets of the partnership were retained for more than a year after its dissolution by the opponent, as surviving partner, with the permission of the administrator. This was an irregularity on the part of the administrator, and there is no doubt that, if any loss had occurred in that time, by reason of the neglect or want of diligence on the part of the person thus entrusted, without authority of law, with the collection of the debts, and the administration of the effects of the firm, the creditors of the firm,—and there were large claims outstanding against it,—would have had just cause of complaint; and the administrator would, in that event, be clearly responsible to them for such loss. Upon this point, however, we have in the record the testimony of Noel himself, who says

" James Hoss died in August or September, 1873, with yellow fever; as soon as the epidemic ceased, in the latter part of October, 1873, witness went to work to liquidate and settle the partnership, and gave his *diligent* labor to that end and purpose up to the 5th of January, 1875, when he turned over to Jacob Hoss, administrator."

It is evident to every one having experience in such matters, that the year following the dissolution of a partnership, particularly one dissolved by the death of a partner, is the most propitious time for collecting the debts due the dissolved firm. As a general rule, the main collections must be made within that time or never, and can be more successfully made by the surviving partner, from his intimate acquaintance with the business and his personal interest in the matter, than by any one else. If, as he says, he used. *due diligence* in their collection, it is reasonable to presume that all debts remaining uncollected after that period, were either bad debts or debts whose collection would be attended with difficulty and delay. If the surviving partner did use every effort to collect them during that period and failed to do so, he certainly cannot charge such failure to the administrator, whatever the creditors of the partnership might do. On the contrary, however, had he failed to use the proper diligence, and the failure to collect during that time been attributable to his neglect, he would be justly responsible to the administrator of his deceased partner's succession for his laches, instead of that administrator being responsible to him, as he claims in this case, for that would be to permit him to profit by his own wrong, and in the absence of complaining creditors he has no right to champion their claims and in their behalf seek to hold the administrator responsible for failures or delinquencies occurring at any period of the administration.

On the 5th of January, 1875, Noel, having sold, as stated, the stock of goods and collected part of the debts, delivered the books and uncollected claims to Messrs. Egan & Wise, attorneys of the administrator, who receipted to him for them. Some of the larger notes had, however, been turned over to them by Noel for collection previously.

To ascertain what degree of diligence was used by this firm in the collection of these claims after they came into their hands, we must refer to the testimony in the record.

Mr. Wise, one of the firm, called as a witness, on this point, says:

" A few months after the death of James Hoss, and after the yellow fever epidemic had subsided, Taylor Noel employed the firm of Egan & Wise to have him qualified as liquidating partner of the firm of Hoss & Noel. We made the application for his appointment, and he went into the possession of the assets and remained in possession until January, 1875. *   *   *   The only claims or assets of the firm received

by Jacob Hoss or his attorneys, were such as those shown by the vou-chers on file. After we got the books into our office, in 1875 or 1876, we got J. W. Tabor, a competent bookkeeper, to draw off a large number of accounts due by various persons and for various amounts. We pre-sented these accounts to the various persons as soon as we could see them or communicate with them, and, in most instances, were shown the receipts of Taylor Noel for the amounts."

In a previous part of his testimony he refers to particular claims, some of which were sued on and put into judgments, and others not sued on because, in his opinion, the succession would be subjected to cost, without hope of realizing anything on the debts; and after describ-ing the manner of proceeding with reference to the collection of the debts, the witness concludes on this point thus: " Taylor Noel was very frequently in our office discussing and consulting with us in reference to the claims against these various persons. He knew of the steps we were taking, as we often called on him to inform us about persons, as to whether it would be advisable to sue or not; and he *never* made any objection to the manner in which we were proceeding."

Mr. Wise's testimony stands uncontradicted, and is supported by other witnesses. In connection with his testimony, we will here state that one of the largest claims due was a mortgage claim of $6000, which the opponent complains was not collected. It is shown by Mr. Wise and other witnesses, that the mortgaged property was taken for the debt, as the best that could be done; and that this was advised and con-sented to by Noel himself.

On the 15th of July, 1875, the following written agreement was entered into between Hoss, Administrator, and Noel, the surviving part-ner, to wit:

" Be it known that we, Jacob Hoss, Administrator of the succession of James Hoss, and Taylor Noel, have entered into the following agree-ment, to wit:

" That E. B. Herndon shall be put in possession of all the notes, accounts and assets generally, due the late firm of Hoss & Noel, for the purpose of settling and collecting same; and all amounts collected placed in a bank in the city of Shreveport to the credit of Hoss & Noel in liquidation, and shall only be drawn therefrom by said parties signing checks or drafts conjointly."

Under this agreement the assets were placed in the hands of Mr. Herndon, who was thus made the attorney of both parties for the pur-poses expressed in the instrument. Such being the case, if Mr. Herndon had failed to give proper attention to the collection of the claims, it is evident that Hoss as administrator would have no right of action against Mr. Noel for such failure on the part of their common agent, and just

as little could the administrator be held accountable to Noel for such delinquency, whatever rights the creditors of the concern might have had against both. The evidence, however, satisfies us that there was no delinquency in this instance of which either Noel or Hoss, Administrator, had a right to complain.

Mr. Herndon in his testimony on this point says: " Under an agreement with Taylor Noel and Jacob Hoss, Administrator, some of the accounts due the firm of Hoss & Noel were turned over to me for collection."

The witness then proceeds to take up these claims, one by one, and shows what disposition was made of them, and if uncollected, giving the reasons therefor. Resuming he further says:

" I got on a horse and called in person on all these persons. I had several interviews with Taylor Noel during the time the claims were in my hands and advised with him about them, It would have been a needless expense in my opinion to have brought suit upon these claims."

There is much more in his testimony to the same effect, but we deem further quotation from this witness or others corroborative, unnecessary.

We have thus followed the administration of this unfortunate partnership from the very beginning, and, departing from our usual rule of stating our conclusions from the evidence, have copied extensively from the evidence itself, with a view that it might or not appear whether there was any fact or circumstance attending this administration that could reasonably afford the opponent ground of complaint and legally subject the administrator to a liability in his favor on account of his (the administrator's) acts and omissions. We fail to find such. Whatever may have been done or omitted by the administrator, seems to have been done or omitted with the sanction of Noel, and partly through Noel himself.

We leave out of view the liability that both the administrator and Noel may have incurred to the creditors of the partnership, and have confined our attention to the consideration exclusively of those matters which might affect the responsibility of the administrator to the surviving partner.

Nor have we dwelt on the fact referred to by the counsel for the administrator, that the debts of the partnership are far beyond its assets, and still unpaid; that, until paid, Noel could receive nothing therefrom; and that he was thus without interest to make this contest, and the suit or opposition, was, therefore, speculative on his part. This fact of excess of debts referred to does clearly appear from the record, but while it may not establish opponent's entire want of interest, however remote or contingent it may appear, yet it may well be viewed as confirming the justice of the conclusions we have announced touching the unreasonableness of his complaints.

The judgment appealed from is affirmed at the cost of the appellant.